A. Franklin Mahoney, J.
On September 15, 1972 at a Special Term held in and for the County of Rensselaer, the peti- . tioner sought an order annulling a determination of respondent not to purchase a parcel of improved realty owned by petitioner which had heretofore been designated as a property “to be *1059 acquired ” in the urban renewal plan presented to and adopted by the Troy City Council on May 21, 1971. The petitioner also requested that within the ambit of the order sought should be decretal directions prohibiting respondent from negotiation for the purchase of properties designated “to be acquired” and, further, from implementing its urban renewal plan until such time as the legality of respondent’s conduct in changing the classification of petitioner’s property from “ to be acquired ” to “not to be acquired” status had been tested. The thrust of petitioner’s argument is that the adoption of the urban renewal plan by the local governing body constituted a rezoning of petitioner’s property from “business” to “residential” and thereby placed a legal restraint on its use or alienability amounting to a constructive condemnation, all in violation of petitioner’s constitutional right of due process.
In a memorandum dated November 8, 1972 the undersigned dismissed petitioner’s motion as premature on the ground that the Troy City Council had not passed any resolution altering the adopted plan so as to change the classification of any property from “to be acquired” to “not to be acquired”.
Petitioner moved for reargument pursuant to CPLR 2221 and, after the motion was granted, urged anew upon the court the zoning argument and also the further contention that if the city should approve the change in classification of properties in a manner that affected the subject property, then the requirement of section C-2(d) of the approved urban renewal plan that all “ not to be acquired ” property will be required to meet the provisions of paragraph D.2 of the plan requiring that all such properties be upgraded in accordance with the minimum property rehabilitation standards would amount to a de facto condemnation under the power or threat of eminent domain in that it would cause petitioner to expend moneys, albeit by application for a low cost Federal loan, to improve her property involuntarily, all in violation of State and Federal due process constitutional rights.
The undersigned adheres to its original determination dismissing the petition and withdraws leave heretofore granted to resubmit if it should develop that petitioner’s property is not taken and is in fact rezoned.
Articles 15, 15-A and 15-B of the General Municipal Law entitled “ Urban Renewal ” (added by L. 1961, ch. 402, eff. April 11, 1961) and particularly subdivision 4 of section 503-a (added by L. 1962, ch. 921, § 3) entitled “ Cooperation with agencies ” and “ New York State Urban Development Corporation Act ” *1060 (added by L. 1968, ch. 174, § 1, eff. April 10, 1968) and particularly subdivision (3) of section 16 of chapter 174 of the Laws of 1968 of the New York State Urban Development Corporation Act set at rest petitioner’s argument that adoption of the Urban Renewal Agency’s plan amounted to an unauthorized rezoning tantamount to an unconstitutional “taking” of petitioner’s property. Section 16 of the New York State Urban Development Corporation Act has been upheld as valid and constitutional insofar as it purports to exempt projects of the corporation from zoning laws and other regulations of cities and other municipalities on the theory that the act deals with matters of State concern and relates to matters exempted from the grant pf zoning authority to municipalities under subdivision 4 of section 11 of the Statute of Local Governments (L. 1964, eh. 205; N. Y. Const., art. IX, § 3, subd. [a], par. [3]; art. XVIII, § 1). (See Floyd v. New York State Urban Development Corp., 70 Misc 2d 187; also Valvo v. Urban Development Corp., 71 Misc 2d 335.)
Similarly, section 503-a (subd. 4, par. [e]) of the General Municipal Law (Urban Renewal) states that a municipality may “(e) plan, replan, zone or rezone any area of the munipipality or make variances to building codes or regulations ” all in furtherance of the plans and goals of the local Urban Renewal Agency. Therefore, it can be said that when the Troy City Council approved the local urban renewal plan on May 27,1971 it also, in furtherance of that plan, ■ approved the designation of the zone or area in which petitioner’s property is located as residential. Even, arguendo, if additional resolutions are required to effect such a change, it is unlikely that the local governing body would withhold its co-operation.[1] Next, petitioner’s contenion that restriction of use or of sale by a change in zoning ordinance amounts to an unlawful taking is without merit. This is not to say that the unreasonable withholding of a variance or the refusal to recognize a permissible nonconforming use by a municipality is not violative of due process, but, rather, that a distinction must be made between the acts of local bodies and those of sovereigns charged with larger and greater responsibilities. Recognition must be given to the fact that herein we are dealing with a generic law of State-wide application and, further, that the management of public affairs by a sovereign requires an awareness that a general public need so imperative and grave may exist that its attainment and ful *1061 Ailment requires a constitutionally permissible subrogation of personal constitutional rights. In other words, the City of Troy might not be able to change its zoning law's in a manner that would adversely affect the rights of petitioner by reason of a prior conforming use, but, the State, in the interest of the general good of all the people, may pass laws for the general good that, unhappily, narrows the rights of its individual citizens. The local Urban Renewal Agency, as an arm of the State, may also impinge, constitutionally, on those same rights.
The last contention of petitioner that compelled compliance with the rehabilitation provisions of the urban renewal plan, in the event the subject property is ultimately classified as “ not to be acquired ”, amounts to a diminution of right that should cause respondent to respond in damages is, also, without merit. The plan provides machinery by which the Troy Urban Renewal Agency may acquire the property if an owner will not or cannot comply or conform to the rehabilitation standards. Such a taking would require just and adequate compensation. It is also possible that petitioner’s eligibility for low cost Federal loans to rehabilitate the" subject property may enhance its value as potential investment property or make it more attractive to prospective purchasers. In any event, the court cannot perceive how the exercise of either alternative by the petitioner would result in compensable damages.
The proceeding is dismissed.

. A resolution changing the classification of petitioner’s property, among others, was passed by the Troy City Council on February 1,1973.